**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EVANGELINA SALVADOR RODRIGUEZ, | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-00798 |
| | § | |
| MARTIN FRINK, *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM & ORDER**

Before the Court is Petitioner Evangelina Salvador Rodriguez's Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents' Motion for Summary Judgment (ECF No. 10). For the following reasons, the Court **GRANTS IN PART** the Petition for Habeas Corpus and **DENIES** Respondents' Motion for Summary Judgment.

## I.    BACKGROUND

The parties do not dispute the following facts. Petitioner Evangelina Salvador Rodriguez is a forty-three-year-old citizen of Mexico who entered the United States without inspection in 2008, over seventeen years ago. ECF No. 1 at ¶ 14. She has resided in the United States continuously since that time. *Id*. Salvador Rodriguez is a mother of two U.S. citizen children, ages ten and fourteen. *Id*. at ¶ 3. Prior to her detention, she lived in Dallas, Texas. *Id*.

Petitioner was taken into immigration custody after being arrested and charged in state court with assault on September 7, 2025. ECF No. 1-2, Ex. A (Rejection of Criminal Case). The Dallas County District Attorney submitted an affidavit of non-prosecution on September 22, 2025, meaning that the charges against Salvador Rodriguez were never filed. *Id*. This was Salvador

1 / 20

Rodriguez's first encounter with the criminal legal system; she has no prior criminal record. Salvador Rodriguez was then transferred to Immigration and Customs Enforcement (ICE) custody, where she has been detained since at least October 3, 2025. ECF No. 1 at ¶ 8. She is currently detained at the Houston Contract Detention Facility. *Id*. at ¶ 8.

On November 12, 2025, Salvador Rodriguez was issued a Notice to Appear in removal proceedings under § 240 of the Immigration and Nationality Act (INA). *See* ECF No. 10, Ex. 1 (Notice to Appear). The Notice charged her with being subject to removal under INA § 212(a)(6)(A)(1) as "an alien present in the United States without being admitted or paroled." *Id.* Petitioner intends to pursue cancellation of removal on the basis that she has been "has been physically present in the United States for a continuous period of not less than 10 years," "has been a person of good moral character during that period," has not been convicted of a disqualifying criminal offense, and has two U.S. citizen children who would suffer "exceptional and extremely unusual hardship" in her absence. 8 U.S.C. § 1229b(b)(1). Her removal proceedings are ongoing.

On January 7, 2026, Salvador Rodriguez (through counsel) requested a bond hearing before an immigration judge (IJ). ECF No. 1 at ¶ 22. On January 14, the IJ denied bond on the basis that he lacked jurisdiction to consider Salvador Rodriguez's request under the Board of Immigration Appeals' decision in *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 220 (B.I.A. 2025), which held that noncitizens who entered the country without being admitted are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id*. at ¶ 23. Salvador Rodriguez filed the instant Petition for Habeas Corpus on February 2, 2026.

II.     ANALYSIS

Salvador Rodriguez claims that her continued detention without a bond hearing is unlawful on multiple grounds: as a violation of her substantive and procedural rights under the Fifth Amendment's Due Process Clause, as a violation of the INA, and as a violation of the Administrative Procedure Act. Because the Court agrees that § 1225(b)(2) violates the Due Process Clause as applied to Salvador Rodriguez, it does not address her additional claims.

**A. Petitioner has properly asserted a substantive due process challenge to her detention under § 1225(b)(2).**

At the outset, the parties disagree about the proper characterization of Petitioner's due process claim. Respondents contend that Salvador Rodriguez's due process claim is properly characterized as "substantive, not procedural." ECF No. 10 at 6. Petitioner maintains that she has properly raised both a procedural and a substantive due process challenge.

To support their position, Respondents rely on *Connecticut Dep't of Pub. Safety v. Doe*, in which the Supreme Court noted that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." 538 U.S. 1, 8 (2003). Respondents argue that the only "relevant fact" under § 1225(b)(2) is whether an individual is "clearly and beyond a doubt entitled to be admitted" into the United States. 8 U.S.C. § 1225(b)(2)(A). Since Petitioner has contested neither the fact that she entered the country without inspection nor the procedures used to make that determination, Respondents characterize Petitioner's procedural due process claim as "a substantive challenge [to § 1225] recast in 'procedural due process' terms." *Connecticut Dep't of Pub. Safety*, 538 U.S. at 8 (internal quotation marks omitted).

3 / 20

The Court has its doubts as to whether *Connecticut Dep't of Pub. Safety v. Doe* is applicable here.[1] But because it concludes that § 1225(b)(2), as applied, violates Petitioner's substantive due process rights, it need not address the question of whether the same outcome could be reached through a procedural due process challenge.

### i.    *Demore v. Kim* does not foreclose Petitioner's due process claim.

Before discussing the specifics of Petitioner's due process challenge, the Court will address Respondents' contention that the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510, 527-28 (2003), forecloses any substantive due process challenges to mandatory detention during removal proceedings. This argument misrepresents the Court's holding in *Demore* and fails to account for post-*Demore* decisions by the Supreme Court and several Courts of Appeals. Respondents also ignore the fact that *Demore* dealt with mandatory detention for "criminal aliens"—that is, noncitizens rendered deportable on account of certain criminal convictions—whereas § 1225(b)(2) applies to noncitizens like Petitioner who have no criminal record.

---

[1] Specifically, the Court disagrees that risk of flight and danger to the community are "irrelevant" to detention under § 1225(b)(2). It is well-established that civil immigration detention—whether mandatory or permissive—is constitutional only insofar as it serves the nonpunitive, immigration-related purpose of facilitating lawful removal of removable noncitizens. *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("[D]etention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."); *id*. at 236 ("The order of deportation is not a punishment for crime. . . . It is but a method of enforcing the return to his own country of an alien [who is lawfully removable]."). Even setting aside the fact that *Connecticut Dep't of Pub. Safety* dealt with a much less severe deprivation of liberty—the restrictions associated with placing one's name on a public sex offender registry—on the basis of a much more serious underlying determination—a criminal conviction for a sex offense—Supreme Court precedent makes clear that a person's danger to the community and risk of flight *are* relevant to § 1225(b)(2) or any statutory provision that allows for detention in the immigration context. Respondents' argument thus misunderstands the purpose of detention under § 1225(b)(2) or any civil immigration statute, which is only constitutional insofar as it serves a nonpunitive immigration purpose—namely, ensuring appearance at future immigration proceedings or preventing danger to the community.

4 / 20

*Demore* addressed a due process challenge to 8 U.S.C. § 1226(c), which "mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." *Demore*, 538 U.S. at 518. In *Demore*, the Court held that under the circumstances before them, "the Government [could] constitutionally detain deportable aliens [under § 1226(c)] during the limited period necessary for their removal proceedings." *Id*. at 526. While *Demore* Court reaffirmed that civil detention must "bear[] a reasonable relation to the purpose for which the individual was committed" in order to comport with due process, it found that the detention as issue met this requirement because it "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." *Id*. at 527-28 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

In reaching this conclusion, the Court relied on the "brief" average length of detention under § 1226(c) in 2003. *Id*. at 523. Specifically, the *Demore* Court cited statistics showing that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days," or four months longer in those cases "in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals."[2] *Id*. at 529. The Court reaffirmed that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas*, 533 U.S. at 690, but noted that "[w]hile the period of detention in *Zadvydas* was 'indefinite' and 'potentially permanent," the detention at issue in *Demore* "[wa]s of a much shorter duration." *Demore*, 538 U.S. at 528.

---

[2] It is worth noting that these statistics were inaccurate. In fact, § 1226(c) detention typically lasted twice as long as the Government represented in *Demore*. *See Jennings v. Rodriguez*, 583 U.S. 281, 343 (2018) (Breyer, J., dissenting) ("The Government now tells us that the statistics it gave to the Court in *Demore* were wrong. Detention normally lasts twice as long as the Government then said it did.").

In a concurring opinion, Justice Kennedy further explained that that "since the Due Process Clause prohibits arbitrary deprivations of liberty," mandatory detention under § 1226(c) might violate due process "if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). Specifically, Justice Kennedy found that "[w]ere there to be an unreasonable delay by the [Immigration and Nationality Service] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id*. at 532-33. Because Justice Kennedy provided a decisive vote for the relevant portion of the five-to-four majority opinion in *Demore*, his concurrence must be accorded significant weight.

Respondents treat *Demore* as precluding any due process challenge to pre-removal order detention without an individualized assessment of flight risk or danger. But this is misleading. Not only did *Demore* leave open the possibility of future as-applied challenges to § 1226(c), both the Supreme Court and numerous circuit courts have addressed the question in the years since *Demore* was decided. In *Jennings v. Rodriguez*, the Supreme Court held that as a matter of statutory interpretation, both § 1226(c) and § 1225(b)(2) clearly "authorize detention until the end of applicable proceedings." 583 U.S. 281, 297 (2018). However, the Court remanded to the Court of Appeals to consider whether these statutes violated due process as applied. *Id*. at 312. "If *Demore* had, in fact, foreclosed [due process challenges to § 1226(c)], the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider [the due process challenge] in the first instance.'" *Black v. Decker*, 103 F.4th 133, 149 (2d Cir. 2024) (quoting *Jennings*, 583 U.S. at 291).

In the wake of *Jennings*, multiple Courts of Appeals have had the opportunity to consider the merits of constitutional challenges to § 1226(c). While they have taken different approaches,

the majority of these courts have found that the Due Process Clause requires an individualized assessment of flight risk and danger when detention under § 1226(c) becomes unreasonable in relation to the statute's purpose of facilitating lawful removal.[3] *See Black*, 103 F.4th at 145 ("The Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing."); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) ("[W]e adhere to the notion that the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention . . . under § 1226(c)." (internal quotation marks omitted)); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) (holding that due process "demands a hearing" when detention under § 1226(c) "becomes unreasonable"), *but see Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024) (reaching the opposite conclusion).

The Court agrees with the First, Second, and Third Circuits that the Due Process Clause imposes a "reasonableness" limitation on mandatory detention of "criminal aliens" under § 1226(c). And if *Demore* did not foreclose as-applied due process challenges to § 1226(c), it

---

[3] The Fifth Circuit addressed detention of "criminal aliens" under § 1226(c) in a four-paragraph unpublished opinion. *See Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022). The majority held that "the district court did not err by denying [the Petitioner's] § 2241 petition" because he failed to "meet the statutory requirements for release under Section 1226(c)(2)." *Id*. It did not meaningfully address the question of whether the petitioner's detention violated the Due Process Clause, but instead appeared to rely on the Supreme Court's conclusion in *Jennings* that the plain text of § 1226(c) required mandatory detention. *Id*.

"Because *Wekesa* is an unpublished opinion, it has no binding precedential value, and the Court considers it only to the extent it is persuasive on the force of its own reasoning." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 683 (W.D. Tex. 2025) (citing 5th Cir. L.R. 47.5). It is not clear to this Court that the *Wekesa* majority addressed a constitutional claim in the first instance. To the extent it did so, the Court agrees with Judge Dennis' statement in dissent that "the Constitution does impose limits on the length of time the Government may detain a noncitizen without a bond hearing." *Wekesa*, 2022 WL 17175818, at *2 (Dennis, J., dissenting).

certainly did not foreclose similar challenges to § 1225(b)(2)—an entirely different statutory provision that applies to noncitizens with no criminal records.

ii.    **The relevant question is whether Petitioner's detention bears a reasonable relation to the purpose of § 1225(b)(2).**

Respondents also argue that the Court should apply rational basis review to assess the substantive constitutionality of Petitioner's ongoing detention because this detention "does not implicate any fundamental rights." ECF No. 10 at 8. The Court disagrees. Rather, the Court understands *Zadvydas*, *Demore*, and subsequent appellate cases as requiring that mandatory immigration detention be "reasonable" in relation to its immigration-related purpose. *See Zadvydas*, 533 U.S. at 690 (noting that immigration detention must "bear[] a reasonable relation to the purpose for which the individual was committed" in order to comply with due process); *Demore*, 538 U.S. at 532 (Kennedy, J., concurring) (affirming that mandatory immigration detention would likely violate due process "if [it] became unreasonable or unjustified"); *German Santos*, 965 F.3d at 210 (holding that "when detention becomes unreasonable, the Due Process Clause demands a hearing").

While the relevant Supreme Court precedent is admittedly unclear regarding the proper standard of review for substantive due process claims in the immigration detention context, it is well-established that aliens have a constitutionally protected liberty interest in freedom from detention. For example, in *Reno v. Flores*, the Court declined to apply strict scrutiny in evaluating "the alleged right of a[n] [alien] child who has no available parent, close relative, or legal guardian . . . to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution," but specifically noted that "[t]he 'freedom from physical restraint' . . . is not at issue in this case." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Freedom from physical restraint clearly is at stake in cases involving adult

immigration detention under § 1225(b)(2). As Justice O'Connor stated in her *Reno* concurrence, "[t]he institutionalization of an adult by the government triggers heightened, substantive due process scrutiny," including in the immigration detention context. *Reno*, 507 U.S. at 316 (O'Connor, J., concurring). This makes sense, given that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992).

In *Zadvydas*, the Court again affirmed that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Rather than applying a traditional strict scrutiny analysis, however, the *Zadvydas* Court analyzed the substantive due process question in terms of whether a noncitizen's detention "bears a reasonable relation to the purpose for which the individual was committed."[4] *Id.* The Court relied on the same test in *Demore* to analyze the constitutionality of pre-removal order detention of "criminal aliens" under 8 U.S.C. § 1226(c). While the Court upheld the "brief" detention at issue in *Demore*, it did not dispense with the requirement that such detention be reasonable.

Respondents suggest that *Demore* applied rational basis review to determine the constitutionality of Petitioner's detention, ECF No. 10 at 8, but the Court disagrees with this reading. While the language used in *Zadvydas* and reaffirmed in *Demore* bears some similarity to rational basis review, nowhere in either decision did the Court use the words "rational basis" or cite to cases involving rational basis review. This Court assumes that, had the Supreme Court intended to apply rational basis review to due process challenges to immigration detention, it

---

[4] Although *Zadvydas* was ultimately decided on constitutional avoidance grounds, this section of the opinion dealt directly with the constitutional question.

would have done so explicitly. This is especially true given that *Zadvydas*, which first laid out the "reasonability" standard, affirmed that immigration detention implicated a fundamental liberty interest. *Zadvydas*, 533 U.S. at 690. Additionally, in the years since *Demore* was decided, several Courts of Appeals addressing constitutional challenges to detention under § 1226(c) have, in line with Justice Kennedy's decisive concurrence in *Demore*, concluded that due process "demands a hearing" when detention under § 1226(c) "becomes unreasonable" in relation to its lawful purpose. *German Santos*, 965 F.3d at 210; *see also Black*, 103 F.4th at 145; *Reid*, 17 F.4th at 7.

The Court thus concludes that the appropriate standard under which to assess Petitioner's substantive due process challenge is whether her detention is reasonable in relation to the purpose of § 1225(b)(2), and that this standard is more demanding than rational basis review. *Id.*

### B. Petitioner's prolonged detention without an individualized hearing violates substantive due process.

The Court now turns to the specific question at hand: whether, under the circumstances of this case, Salvador Rodriguez's continued detention is reasonable in relation to § 1225(b)(2)'s immigration-related purpose. The Court concludes that it is not.

### i.   Detention under § 1225(b)(2) serves a legitimate immigration-related purpose.

Civil immigration detention—whether mandatory or permissive—is substantively constitutional only insofar as it serves the nonpunitive, immigration-related purpose of facilitating lawful removal of removable noncitizens. *See Wong Wing v. United States*, 163 U.S. 228, 236 (1896) ("The order of deportation is not a punishment for crime. . . . It is but a method of enforcing the return to his own country of an alien [who is lawfully removable]."); *id*. at 235 ("[D]etention or temporary confinement, *as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens*, would be valid." (emphasis added)).

In this case, Respondents argue that detention under § 1225(b)(2) serves the same purpose that the Government identified in *Demore* regarding § 1226(c), namely, "preventing deportable [] aliens from fleeing prior to or during their removal proceedings." *Demore*, 538 U.S. 528; *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (suggesting that the purpose of detention under § 1225(b)(2) is to prevent inadmissible aliens from "abscond[ing]" when released from custody). This is clearly a permissible immigration purpose.[5]

### ii.    The *Mathews* framework applies.

In determining the reasonability of Petitioner's detention under § 1225(b)(2), it is instructive to consider the tests that other courts have used to determine the reasonability of detention under § 1226(c).

To determine whether detention under § 1226(c) is reasonable, courts in the Third Circuit conduct a "highly fact-specific inquiry" which considers, *inter alia*, "the duration of the detention," "whether the detention is likely to continue," "the reasons for the delay" including "whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay,'"[6] and "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.* at 211 (internal citations omitted). Other courts have adopted similar balancing

---

[5] While preventing danger to the community has been accepted as a permissible purpose for immigration detention under some circumstances, *e.g., Zadvydas*, 533 U.S. at 690-91, Respondents do not assert that this is one of the goals of § 1225(b)(2). Nor would this make sense, given § 1225(b)(2) does not assume a prior criminal history. The Court therefore does not assess the reasonability of Petitioner's detention in relation to this purpose. Additionally, "preventive detention based on dangerousness [is generally constitutional] only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. The Court is therefore doubtful that any immigration statute permitting mandatory detention without individualized review could be upheld on the basis of preventing danger.

[6] The Third Circuit approach "do[es] not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because "would "effectively punish [an alien] for pursuing applicable legal remedies." *German Santos*, 965 F.3d at 211 (internal citations omitted).

11 / 20

tests but consider additional factors, such as "whether it is foreseeable that [removal] proceedings will conclude in the near future," whether immigration detention under § 1226(c) is "grossly disproportionate to the length of the detainee's criminal sentence," and "whether it is likely that proceedings will culminate in a final removal order." *Alphonse v. Moniz*, 635 F. Supp. 3d 28, 36 (D. Mass. 2022).

The Second Circuit has adopted the three-part *Mathews v. Eldrige* balancing test to determine the reasonability of detention under § 1226(c), which examines "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).

The Court concludes that *Mathews v. Eldrige* provides an appropriate framework through which to analyze the reasonability of detention under § 1225(b). As the Second Circuit has observed, "*Mathews* 'remains a flexible test,' and takes account of individual circumstances . . . [it] comports with the Supreme Court's guidance in *Jennings* that "'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *Black*, 103 F.4th at 148 (internal citations omitted). The flexible *Mathews* framework can also account for the factors that other courts have found relevant in the immigration detention context, such as the length of detention, whether it is likely to continue, the likelihood of a final order of removal, and whether the detention has punitive elements. Finally, the *Mathews* framework can account for important differences between detention under § 1226(c) and detention under § 1225(b)(2). Namely, whereas § 1226(c) applies to noncitizens convicted of certain serious crimes,

12 / 20

§ 1225(b)(2) requires detention on the basis of a person's status as an "alien[] present within the United States who ha[s] not been admitted" by lawful means" alone. *Buenrostro-Mendez*, 166 F.4th at 498. Mandatory detention under § 1225(b)(2) thus runs a higher risk of becoming unreasonable in relation to its immigration purpose, and must be analyzed accordingly.[7]

Respondents argue "[a]ny reliance on *Mathews* would be misplaced" because Petitioner's due process claim is substantive rather than procedural. ECF No. 10 at 7. It is true that *Mathews* generally applies in the context of procedural rather than substantive due process. But the distinction between procedure and substance in the context of mandatory immigration detention is not as clear-cut as Respondents make out. While *Demore* dealt with a substantive due process challenge, the Courts of Appeals have addressed the constitutionality of detention under § 1226(c) in part by assessing the adequacy of the procedures in place to ensure that the detention continues to serve a lawful purpose, including through the *Mathews* factors.

In assessing the reasonability of Petitioner's detention in relation to § 1225(b)(2)'s purpose of preventing flight, the Court must consider the procedures (or lack thereof) used to make this determination, the Petitioner's liberty interest, the risk of erroneous deprivation, and the Government's interest in detention. *Mathews* is thus appropriate here. However, the Court also

---

[7] Likewise, any generalized assumption that "criminal aliens" are more likely to abscond from immigration court proceedings or present a danger to the community on account of their prior criminal history is inapplicable to people detained under § 1225(b)(2). *See Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *8 (D. Mass. Nov. 7, 2025) (noting that "[d]etention under section 1226(c), as approved in *Demore*, is based on 'personal activity,' demonstrated by a criminal conviction, that rationally supports at least a *prima facie* finding of detention's reasonableness in light of apparent removability . . . [whereas] [n]o such presumptions hold [under section 1225(b)]"); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35-36 (1st Cir. 2021) (noting that "[i]n upholding the constitutionality of section 1226(c)'s mandatory detention procedure in *Demore*, . . . the Court explained that that section specifically applies to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes" and relied on Congressional findings suggesting that "criminal aliens" were likely to abscond).

notes that it would reach the same result through a multi-factor analysis similar to that used by the Third Circuit.

### iii.   Petitioner's continued detention is unreasonable.

The relevant question thus becomes whether, under the facts of this case, Petitioner's detention is "reasonable" in relation to this purpose. This is necessarily a "highly fact-specific inquiry." *German Santos*, 965 F.3d at 211. Here, examination of the *Mathews* factors demonstrates that Petitioner's continued detention without any individualized assessment is unreasonable in relation to § 1225(b)(2)'s purpose of preventing flight during removal proceedings.

### a.   Petitioner's private interest in liberty from detention is significant.

The first factor, the "private interest . . . affected by the official action," *Mathews*, 424 U.S. at 335, weighs heavily in favor of granting relief. The Court incorporates its consideration of the length of Petitioner's detention and whether it is likely to continue under this factor.

The private interest at stake for Salvador Rodriguez is weighty. Salvador Rodriguez has been detained for over five months—over three times as long as the "average time of 47 days" cited in *Demore*. *Demore*, 538 U.S. at 529. She has a potentially valid cancellation of removal claim, which by its terms necessitates a fact-heavy inquiry into whether her children would suffer "exceptional and extremely unusual hardship" if she were removed. 8 U.S.C. § 1229b(b)(1). Additionally, this Court has addressed dozens of immigration habeas cases in recent months, and it is clear from the facts of these cases that removal proceedings often take several years, particularly for individuals like Petitioner who do not have criminal convictions which preclude them from many avenues of relief from removal under the INA. All of these factors lead the Court to conclude that Petitioner's detention is likely to continue for quite some time. While Salvador

Rodriguez's detention is unlikely to be permanent, this does not allay the Court's concerns about its potentially indefinite length.

The liberty interest that Petitioner has accumulated in her life outside of detention during the past eighteen years is also significant. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. While the Due Process Clause applies to noncitizens like Petitioner, "the nature of [its] protection may vary depending upon status and circumstance." *Id*. at 693–94. Here, Petitioner admittedly entered the county unlawfully without inspection. But in the nearly twenty years since arriving in the United States, she has built a life here. Notwithstanding her status as an applicant for admission, "one can still constitutionally recognize [that] [Salvador Rodriguez's] actual life in this country—h[er] years as part of our community—[is] not so easily set aside." *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025); *see also Lopez Miranda v. Flores*, No. EP-25-CV-584-KC, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status").

Salvador Rodriguez's detention has a severe impact on the life she has built in this country. She is the primary caretaker for her two U.S. citizen children, ages ten and fourteen. In the five months that Petitioner has been detained, her children have lacked their mother's care, and her fourteen-year-old child has been forced to assume childcare responsibilities for their younger sibling. Without Salvador Rodriguez's assistance, her partner is struggling to keep the household afloat financially. Additionally, Petitioner's ongoing detention seriously inhibits her ability to defend against removal, particularly given she is detained in Houston while her family and life are

15 / 20

in Dallas, making it difficult for her to develop evidence in support of her application for cancellation of removal. For all of these reasons, the Court concludes that the first *Mathews* factor weights in favor of granting habeas relief.

### b. The risk of erroneous deprivation is severe, and the probable value of additional procedural safeguards is great.

The second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335, also favors relief. This factor allows the Court to consider the relationship between the procedure used in § 1225(b)(2)—mandatory detention without an individualized assessment—and the statute's goal of preventing flight, and whether that procedure is reasonable as applied to Salvador Rodriguez.

It is clear that detaining noncitizens without the possibility of release serves the goal of ensuring that they will appear at future removal proceedings (and for removal, should it be ordered). But here, the risk of erroneous deprivation of Petitioner's protected liberty interest under this procedure is impermissibly high. In the nearly eighteen years that Salvador Rodriguez has resided in the United States, she has never been convicted of or charged with a crime.[8] She also has a potentially valid cancellation of removal claim and thus has every incentive to pursue this claim by appearing at her removal proceedings. More importantly, Respondents have presented no evidence that as a group, noncitizen applicants for admission are particularly likely to present a risk of flight (or a danger to the community, though Respondents do not claim protecting the community as a purpose of § 1225(b)(2)). This is thus unlike the situation in *Demore*, "where Congress . . . 'made specific findings as to the dangerousness of a class of noncitizens'

---

[8] The Court does not consider the assault charge that was never actually filed by the District Attorney.

and . . . 'those findings were found to have justified the detention of noncitizens even in the absence of individualized determinations as to danger and flight risk.'" *Tenemasa-Lema*, 2025 WL 3280555, at *7 (internal citation omitted).

It is possible that the generalized interest in preventing flight could justify detention of a noncitizens based solely on their applicant for admission status for a brief period of days or weeks, such as immediately before a decision is expected in removal proceedings. But under Respondents' new interpretation, § 1225(b)(2) sweeps into detention a much larger swath of noncitizens than § 1226(c), including many like Petitioner who have no criminal history and appear to present little risk of flight or danger. Given this key distinction between § 1225(b) and § 1226(c), the Court concludes that Petitioner's mandatory detention without an individualized assessment of flight risk or danger is unreasonable because it presents an unconstitutionally high risk of erroneous deprivation to Petitioner.[9] Additionally, the value of additional procedures in the form of an individualized bond hearing is obvious. At a bond hearing, an IJ can assess whether there is, in fact, reason to believe that Salvador Rodriguez does present a significant risk of flight. The risk of erroneous deprivation is clearly ameliorated by such a hearing.

### c. The Government's interest in detaining Petitioner without a hearing is minimal.

Finally, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. This factor, too, weighs in favor of relief. Respondents,

---

[9] As previously discussed, the Court is not convinced that preventing danger to the community is a permissible purpose for detention under § 1225(b)(2), and the Government has not asserted that § 1225(b)(2) serves this purpose. However, given that courts have generally accepted that the Government may consider a noncitizen's risk of danger to the community in an individualized bond hearing, the Court will assume without deciding that such consideration is permissible.

"of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Zafra v. Noem*, No. EP-25-CV-00541-DB, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025). And admittedly, conducting a bond hearing imposes a higher administrative burden than not conducting one. But the Government's interest in detaining longtime residents of the United States who have no criminal records and may have valid defenses to removal for an extended, indefinite period without an individualized assessment of their risk of flight is not strong. Indeed, given the high costs of detention and the potential for removal proceedings to last multiple years, the Government would reduce its overall fiscal and administrative burden by detaining only those people who have been determined to pose a danger or flight risk. *See Black*, 103 F.4th at 154 (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day"). The third *Mathews* factor thus favors relief.

The Court therefore concludes that Salvador Rodriguez's continued detention does not "bear[] a reasonable relation to the purpose for which [she] was committed" and thus violates her substantive right to due process. *Demore*, 538 U.S. at 527 (quoting *Zadvydas*, 533 U.S. at 690). It is true that "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish its goal" when it "deals with deportable aliens." *Id.* at 528. But neither does the Constitution permit the Government to detain a noncitizen like Petitioner—who has no criminal history, has lived in the United States for nearly twenty years without incident, is a mother of two minor U.S. citizens children, and has a potentially valid path to gain legal status—for an indefinite and potentially years-long period in prison-like conditions without any individualized assessment of her actual risk of flight or dangerousness, merely because she is an "applicant for admission" under the INA. Indeed, under the Respondents' interpretation, the

18 / 20

Government could detain any noncitizen, no matter how long they have actually lived in the United States, for any length of time, without any individualized justification, so long as that person initially entered the country without lawful admission. If the Due Process Clause's protection of liberty is to have any meaning, it cannot allow for such an outcome.

## III.     REMEDY

Having determined that Salvador Rodriguez's continued detention without an individualized bond hearing violates due process, the Court must now determine the appropriate remedy. In cases involving unconstitutional detention under § 1226(a), courts have determined that the appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that "continued detention is needed to prevent [the noncitizen] from fleeing or harming the community." *German Santos*, 965 F.3d at 213-14; *see also Black*, 103 F.4th at 155 (same). Given Salvador Rodriguez has already been detained for more than five months with no individualized justification, the Court finds that a similar hearing is appropriate here.

The Court therefore **ORDERS** as follows. Respondents must provide Petitioner with a bond hearing before an IJ at which the Government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a risk of flight or a danger to the community. Respondents must provide this hearing within five (5) days, or else release Petitioner.

The Court further **ORDERS** that Respondents file an advisory with the Court on or before March 20, 2026, informing the Court of the result of the hearing and Petitioner's custody status.

**IT IS SO ORDERED.**

Signed at Houston, Texas on March 13, 2026.

Keith P. Ellison
United States District Judge